1

2

3

4

5

6                           UNITED STATES DISTRICT COURT
                            WESTERN DISTRICT OF WASHINGTON
7                                     AT SEATTLE

8    GABRIEL ECKARD,

9                          Plaintiff,            Case No. C19-0882-JCC-MAT

10        v.

11   JAMIE KANE, *et al.*,                       REPORT AND RECOMMENDATION

12                         Defendants.

13

14               INTRODUCTION AND SUMMARY CONCLUSION

15          This is a civil rights action proceeding under 42 U.S.C. § 1983.  Plaintiff Gabriel Eckard

16   is currently in the custody of the Washington Department of Corrections.  The claims asserted in

17   this action arose out of plaintiff's pretrial detention at the Snohomish County Jail ("Jail").  Plaintiff

18   alleges in his complaint that defendants Jamie Kane and Kevin Young, both members of the

19   corrections staff at the Jail, violated his rights under the First, Fourth, Sixth, and Fourteenth

20   Amendments when they imposed limitations on his telephone time after he was transferred to the

21   Jail's Observation Unit in February 2019.  Plaintiff seeks declaratory and injunctive relief, and

22   damages.

23          Plaintiff filed a motion for summary judgment very early in the life of this action.  (Dkt.

REPORT AND RECOMMENDATION
PAGE - 1

1    12.)  Defendants thereafter filed a response to plaintiff's motion together with a cross-motion for

2    summary judgment.  (Dkt. 13.)  Plaintiff has not filed a response to defendants' summary judgment

3    motion despite having been advised of the summary judgment requirements pursuant to *Rand v.*

4    *Rowland*, 154 F.3d 952 (9th Cir. 1998).[1]    The  Court,  having  now  reviewed  plaintiff's

5    complaint, the parties' pending dispositive motions, and the balance of the record, concludes that

6    plaintiff's motion for summary judgment should be denied, defendants' unopposed cross-motion

7    for summary judgment should be granted, and plaintiff's complaint and this action should be

8    dismissed with prejudice.

9                                    BACKGROUND

10    Plaintiff was booked into the Jail on September 4, 2018.  (Dkt. 12 at 2.)  His tenure at the

11    Jail was noteworthy for the sheer volume of litigation it generated.  Among the many cases filed

12    by plaintiff while he was confined at the Jail were cases relating to the actions of various Jail staff

13    members taken in response to plaintiff's persistent threatening and disruptive behavior.  *See, e.g.,*

14    *Eckard v. Mitchell, et al.*, C18-1810-RSM, Dkts. 15-19; *see also*, *Eckard v. Thomas, et al.*, C19-

15    104-RSM; *Eckard v. Lee*, C19-429-RAJ; *Eckard v. Thomas*, C19-431-JCC; *Eckard v. Stites*, C19-

16    738-RSM.  The instant action concerns the conditions of plaintiff's confinement in the Jail's

17    Observation Unit (OU) where he was transferred in early February 2019 after behavioral issues

18    caused him to be moved out of the Jail's maximum-security module.  (*See* Dkt. 5 at 2-4; Dkt. 12

19

20            [1]  After defendants filed their cross-motion for summary judgment, plaintiff filed a motion to strike
      defendants' motion claiming he needed time to conduct discovery before he could effectively respond to the motion.
21    (*See* Dkt. 18.)  This Court denied plaintiff's motion to strike but granted him additional time to file a response to
      defendants' summary judgment motion.  (Dkt. 24.)  Rather than file a response, plaintiff instead filed a motion for
22    reconsideration of the Court's ruling denying his motion to strike.  (Dkt. 26.)  The Court has addressed plaintiff's
      motion for reconsideration in a separate order and notes here only that nothing contained within that motion excuses
      plaintiff's failure to file a response to defendants' summary judgment motion or otherwise precludes the Court from
23    moving forward with respect to the pending cross-motions for summary judgment.

REPORT AND RECOMMENDATION
PAGE - 2

1   at 2-3.)

2       Plaintiff claims he was transferred to the OU in response to the behavior of other inmates

3   in the maximum-security module.[2]  (*See* Dkt. 5 at 2; Dkt. 12 at 2.)  Defendants provide a more

4   detailed description of the circumstances which led to plaintiff being moved out of the maximum-

5   security module and into the OU in their summary judgment papers.  Corrections Deputy Megan

6   McKinney, in a declaration submitted in support of defendants' cross-motion for summary

7   judgment, states that while she was on duty in the Jail's maximum-security module on February

8   3, 2019, plaintiff repeatedly yelled obscenities and racist comments towards other inmates which

9   agitated the other inmates in the module.  (Dkt. 16, ¶ 3.)  Deputy McKinney further states that

10  plaintiff's comments seemed intended to "rile up" the other inmates in the unit and that plaintiff

11  appeared to gain satisfaction from the response he triggered in the other inmates.  (*Id*.)  According

12  to Deputy McKinney, the other inmates began making comments to provoke plaintiff to suicide

13  and threatening to physically harm him if they ever got their hands on him.  (*Id*., ¶ 4.)  Another

14  deputy even discovered two sharpened toothbrushes left on the floor in front of plaintiff's cell

15  door.  (*Id*.)

16      Defendant Young also submitted a declaration in support of defendants' cross-motion for

17  summary judgment.  (Dkt. 15.)  He states therein that in early February 2019, not only was plaintiff

18  riling up other inmates in the maximum-security module, he was also continually pressing the

19  emergency call button in his cell which interfered with the Jail's central control system.  (*Id*., ¶ 2.)

20  According to defendant Young, it was this combination of events that caused plaintiff to be

21  transferred to the OU where he could be prevented from disrupting normal Jail operations.  (*Id*.)

22

23      [2]  Plaintiff refers to the maximum-security module as "segregation" in his motion.  (*See* Dkt. 12 at 2.)

REPORT AND RECOMMENDATION
PAGE - 3

Plaintiff's transfer to the OU did not affect his classification as a maximum-security inmate and he remained subject to the same restrictions and security protocols. (*Id.*) Because of plaintiff's behavioral history, part of his security protocol included requiring additional deputies to be present and monitoring him whenever he was out of his cell. (*Id.*, ¶ 3.)

At the time plaintiff was transferred to the OU, the only telephone available for inmates housed in that module was mounted on the wall in the common area of the module near the entry door. (*Id.*, ¶ 4.) In order for plaintiff to use the telephone, he had to be removed from his cell and brought into the common area of the module and he was therefore monitored by several deputies during his telephone time. (*Id.*) The deputies assigned to monitor plaintiff had to be pulled from other duties in the Jail and this additional burden on Jail staffing necessitated that plaintiff's telephone calls be more limited in duration. (*Id.*) Plaintiff was allowed to use the phone for 15 minutes every other day during his indoor recreation time. (*Id.*, ¶ 5.) In contrast, lower security inmates are typically allowed to use the telephones whenever they are out of their cells. (*Id.*)

On July 3, 2019, a wall-mounted tablet, which doubled as a telephone, was installed in the secured vestibule immediately outside plaintiff's OU cell that was used for his indoor recreation time. (*Id.*, ¶ 6.) Plaintiff was thereafter able to make phone calls during his entire indoor recreation time which was two hours per day. (*Id.*) Defendant Young, on one occasion, arranged to provide a County-issued cell phone specifically for the purpose of plaintiff making a scheduled call to the attorney representing him in a civil parental rights case. (*Id.*) However, immediately after completing his attorney call, plaintiff used the internet browser function on the cell phone to visit a pornographic website. (*Id.*)

Plaintiff asserts in his complaint that the limitations imposed on his use of the telephone after his transfer into the OU deprived him of (1) meaningful communication with his family, (2)

REPORT AND RECOMMENDATION
PAGE - 4

1    teleconferences with his attorneys and, by extension, access to the courts, and (3) property in the

2    form of telephone time and the money paid for it.  (*See* Dkt. 5 at 4.)  Plaintiff maintains that these

3    alleged deprivations violated his rights under the First, Fourth, Sixth and Fourteenth Amendments.

4    (*See id*.)  Plaintiff now seeks summary judgment with respect to each of his asserted claims.  (Dkt.

5    12.)  Defendants oppose plaintiff's motion for summary judgment and themselves seek summary

6    judgment with respect to each of plaintiff's asserted claims.  (Dkt. 13.)

7                                            DISCUSSION

8                                    Summary Judgment Standard

9           Summary judgment is appropriate when a "movant shows that there is no genuine dispute

10   as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

11   56(a).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails

12   to make a sufficient showing on an essential element of his case with respect to which he has the

13   burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears

14   the initial burden of showing the district court "that there is an absence of evidence to support the

15   nonmoving party's case."  *Id.* at 325.  The moving party can carry its initial burden by producing

16   affirmative evidence that negates an essential element of the nonmovant's case, or by establishing

17   that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at

18   trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).

19   The burden then shifts to the nonmoving party to establish a genuine issue of material fact.

20   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court must

21   draw all reasonable inferences in favor of the nonmoving party.  *Id*. at 585-87.

22          In supporting a factual position, a party must "cit[e] to particular parts of materials in the

23   record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine

REPORT AND RECOMMENDATION
PAGE - 5

dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact. . . .  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that

REPORT AND RECOMMENDATION
PAGE - 6

caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

<u>Punishment Prior to Conviction</u>

Plaintiff appears to assert that the limitations imposed on his telephone time violated his due process rights by subjecting him to punishment prior to conviction. (*See* Dkt. 12 at 2-4, 14-15.) Defendants argue that, to the extent plaintiff alleges the limitations on his telephone time constituted a *per se* infliction of punishment prior to conviction, his claims are meritless. (*See* Dkt. 13 at 6-8.) Defendants are correct.

When a pre-trial detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Such challenges arise under the Fourteenth Amendment Due Process Clause. *Id*. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537.

The test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. The

REPORT AND RECOMMENDATION
PAGE - 7

1    Supreme Court has further recognized that prison administrators "should be accorded wide-

2    ranging deference in the adoption and execution of policies and practices that in their judgment

3    are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at

4    547.

5          Defendants assert that the limitations imposed on plaintiff's telephone time did not amount

6    to punishment but were, instead, reasonable limitations necessitated by plaintiff's documented

7    history of making explicit threats of physical harm to Jail staff. (Dkt. 13 at 7-8.) More specifically,

8    defendants argue that it was reasonable for them to assign multiple deputies to monitor plaintiff

9    while he was out of his cell, and that the need for multiple deputies, who had to be diverted from

10   other duties to monitor plaintiff, made it reasonable to limit the length of plaintiff's calls so as not

11   to create lengthy disruptions in the Jail's operations by diverting multiple officers for extended

12   periods of time. (*Id*. at 8.)

13         Plaintiff offers no evidence that the limitations on his telephone time were imposed with

14   the express intent to punish him.  The Court therefore turns to the question of whether the

15   limitations were reasonably related to a legitimate government interest.  Plaintiff bears the burden

16   of proving the absence of legitimate correctional goals for the conduct of which he complains.  *See*

17   *Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995).  Plaintiff fails to meet this burden.  The

18   evidence in the record demonstrates that the limitations imposed on plaintiff's telephone time were

19   reasonably related to the legitimate government interests of maintaining institutional security and

20   preserving internal order and discipline.  Defendants are therefore entitled to summary judgment

21   with respect to plaintiff's due process claim.

22                                    <u>Right to Counsel</u>

23         Plaintiff also asserts that the limitations imposed on his telephone usage in the OU

REPORT AND RECOMMENDATION
PAGE - 8

interfered with his right to meaningful representation and meaningful court access.  (*See* Dkt. 12 at 5-7, 12-13.)  Plaintiff argues that he had attorneys appointed to represent him in both his pending criminal case and in a pending child dependency case, and that under the schedule established by defendants he was only able to make two attorney calls per week, for less than 15 minutes each, which was constitutionally inadequate.  (*See id*.)  Plaintiff argues that his rights were further violated by the fact that corrections deputies were always within earshot of his phone conversations making private calls with his attorneys impossible.  (*Id*. at 13.)  Defendants argue that plaintiff's telephone limitations did not affect his right to counsel.  (*See* Dkt. 13 at 8-10.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI; *see also*, *Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963).  A criminal defendant also has a right, under the Sixth Amendment, to refuse the assistance of counsel and to represent himself in criminal proceedings.  *See Faretta v. California*, 422 U.S. 806 (1975).  Plaintiff, in fact, availed himself of his right to represent himself for a period of time during the pendency of his criminal case. Defendants have submitted evidence in support of their summary judgment motion demonstrating that on January 18, 2019 plaintiff requested, and was granted, leave to proceed *pro se* in his criminal case.  (*See* Dkt. 14, Ex. A.)  Plaintiff retained his *pro se* status until September 27, 2019 when he returned to court and advised that he no longer wanted to proceed *pro se* and, instead, wanted to be represented by an attorney.  (*Id*., ¶ 3.)

The phone restrictions plaintiff complains of were only in effect from early February 2019 when plaintiff was transferred to the OU until July 3, 2019 when a new phone system was installed that allowed plaintiff to make phone calls during his entire two hour daily indoor recreation time without intrusive monitoring by corrections staff.  (*See* Dkt. 15, ¶ 6.)  Since plaintiff was

REPORT AND RECOMMENDATION
PAGE - 9

representing himself during the entire five-month period the restrictions were in place, his claim that the restrictions interfered with his right to counsel is frivolous.

To the extent plaintiff claims that the telephone restrictions imposed by defendants interfered with his ability to speak with counsel in his parental rights case, he has not stated any viable claim for relief. As defendants correctly note, the Sixth Amendment right to counsel reaches only the attorney-client relationship in criminal cases. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974) ("As to the Sixth Amendment, its reach is only to protect the attorney-client relationship from intrusion in the criminal setting[.]")  And, the United States Supreme Court has made clear that a parent has no absolute right under the Fourteenth Amendment to counsel in a parental rights proceeding. *See Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18, 31-32 (1981).  As plaintiff had no right to counsel in his parental rights case, any claim that the restrictions on telephone access interfered with his relationship with counsel in that case do not implicate federal constitutional concerns.

To the extent plaintiff intends to allege that the restrictions on his telephone access interfered with his constitutional right to access the courts, separate and apart from the alleged interference with his right to counsel, plaintiff still fails to state any claim upon which relief may be granted.  Prisoners have a "fundamental constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  However, the Supreme Court has made clear that in order to adequately allege a cause of action for deprivation of the right of access to the courts, an inmate must demonstrate that he suffered some actual injury to his right of access.  *Lewis v. Casey*, 518 U.S. 343, 349 (1996).  Plaintiff fails to allege any facts demonstrating that he has suffered an actual injury to his right of access arising out of the telephone restrictions imposed by defendants. Plaintiff therefore fails to adequately allege a viable access to courts claim.

REPORT AND RECOMMENDATION
PAGE - 10

For the reasons set forth above, defendants are entitled to summary judgment with respect to plaintiff's access to counsel and access to courts claims.

Telephone Access

Plaintiff asserts that the limitations imposed on his telephone access violated his rights under the First Amendment because they were not reasonably related to a legitimate, neutral, government interest.  (*See* Dkt. 12 at 7-11.)  Defendants argue that the telephone limitations did not impinge on plaintiff's freedom of speech.  (Dkt. 13 at 10-13.)  The parties agree that the proper test for evaluating whether a prison regulation encroaches on an inmate's constitutional rights is that set forth in *Turner v. Safley*, 482 U.S. 78 (1987).  In *Turner*, the Supreme Court held that a prison regulation is valid only if the regulation is "reasonably related" to legitimate penological interests, and it identified four factors for courts to consider in determining reasonableness:  (1) the existence of a 'valid, rational connection' between the regulation and the legitimate governmental interest put forward to justify it; (2) the existence of an alternative means of exercising the right that remains open to the prisoner; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the inmate's rights at a *de minimis* cost to valid penological objectives.  *Id*. at 89-91.

Legitimate penological interests include "security, order, and rehabilitation."  *Procunier v. Martinez*, 416 U.S. 396, 413 (1974).  A reviewing court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."  *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  The burden is not on the state to prove the validity of a challenged regulation but is instead on the inmate to disprove it.  *Id*.

REPORT AND RECOMMENDATION
PAGE - 11

Plaintiff argues in his summary judgment motion that the practice of allowing him only 15 minutes of telephone access was not reasonably related to a legitimate government interest.  (Dkt. 12 at 9.)  Plaintiff goes on to assert that because the practice was unreasonable, it fails the first *Turner* factor and therefore fails the test as a whole, making inquiry into the remaining factors unnecessary.  (*Id*.)  These conclusory assertions are insufficient to establish that the limitations on plaintiff's telephone access violated his First Amendment rights.  And, in fact, the evidence in the record supports the conclusion that the limitations were reasonably related to legitimate penological interests.

The first *Turner* factor, whether there was a "valid, rational connection" between the regulation and the legitimate interest put forward to justify it weighs in favor of defendants.  Defendants argue that the 15-minute limitation on plaintiff's telephone calls was reasonably related to the Jail's interest in maintaining security.  (Dkt. 13 at 11.)  At the time the limitation was imposed, plaintiff had a documented history of making violent threats against staff members at the Jail, and the physical configuration of the OU necessitated that plaintiff be released from his cell in order to use the telephone in the common area of the module.  Given the serious nature of plaintiff's prior threats, and his persistent misbehavior during the course of his confinement at the Jail, it was reasonable for Jail officials to assign multiple deputies to monitor plaintiff while he was out of his cell in order to prevent and/or respond to any disruptive behavior.  It was likewise reasonable, and in the interest of security, for Jail officials to minimize the amount of time plaintiff was out of his cell.

The second *Turner* factor, whether there were alternate ways for plaintiff to exercise his First Amendment rights, also weighs in favor of defendants.  To the extent plaintiff complains about his ability to communicate with his attorneys, his claim implicates his rights to counsel and

REPORT AND RECOMMENDATION
PAGE - 12

to access the courts which were discussed in greater detail above.  To the extent plaintiff complains about his ability to communicate with non-attorneys, plaintiff offers no evidence that this communication could not have been accomplished through the 15-minute phone calls he was allowed and through other means such as mail which would have permitted him to communicate in writing with those he could not communicate with via telephone.[3]

The third *Turner* factor, the impact that accommodation of the right would have on guards and other inmates, and on the allocation of prison resources generally, weighs in favor of defendants as well.  The security threat posed by plaintiff necessitated additional staffing be assigned to monitor him while he was outside of his cell using the telephone.  The additional deputies had to be diverted from other duties within the facility which left them unavailable to perform other important duties such as escorting inmates between modules or to and from the courthouse, or responding to security incidents within the facility.  Defendants had a legitimate interest in minimizing the disruptions caused by plaintiff.

As to the final *Turner* factor, the absence of ready alternatives, the evidence in the record demonstrates that the limitations imposed on plaintiff's telephone time were lifted once the wall-mounted tablet was installed in the secured vestibule immediately outside his cell which eliminated the need for additional staffing during plaintiff's calls.  The fact that the restrictions were eliminated once an alternative became available demonstrates, as defendants suggest, that the initial restrictions were not arbitrary.  Defendants acknowledge they could have provided plaintiff with additional cellular telephone time, but because he abused the one opportunity provided him

---

[3] It is noteworthy that despite his complaints regarding the adequacy of the telephone time provided him, during the period of time plaintiff's calls were limited, from early February 2019 to early July 2019, plaintiff only attempted six telephone calls.  (Dkt. 14, Ex. B at 2.)  This suggests that plaintiff had ample opportunity to make additional calls, whether to his attorney or to others, and simply opted not to do so.

REPORT AND RECOMMENDATION
PAGE - 13

by accessing pornography on the internet when in possession of a cell phone, removing that option was consistent with defendants' legitimate interest in maintaining order and discipline within the facility.

Plaintiff has made no showing that the restrictions on his telephone access during the initial months he was assigned to the OU violated his First Amendment rights and, in fact, defendants' evidence supports the contrary conclusion. Defendants are therefore entitled to summary judgment with respect to plaintiff's First Amendment claim.

<u>Deprivation of Property</u>

Finally, plaintiff asserts that his Fourth and Fourteenth Amendment rights were violated when he was deprived of money paid for telephone calls that were cut short by the expiration of the 15-minute telephone time limit. (*See* Dkt. 12 at 4-5, 11-12.) Plaintiff claims that the cost of a 15-minute phone call was about $4, and that because of the time it would take to make billing arrangements and to dial numbers and connect the calls, he was never able to use the full 15 minutes for conversation and was forced to end his calls before the time he had paid for expired. (*See* Dkt. 5 at 3; Dkt. 12 at 2-3.)

Plaintiff has submitted no evidence demonstrating that he was, in fact, deprived of money he or his family paid for telephone calls. Defendants, in contrast, have submitted evidence in the form of telephone records which refute plaintiff's claim that he paid for telephone time which he was not permitted to use. These records show that plaintiff was charged only for the actual duration of the call at a rate of twenty cents per minute. (*See* Dkt. 14 at Exs. B, C.) Plaintiff's claim that he lost paid telephone time is without any support in the record and, thus, any claim that his Fourth and/or Fourteenth Amendment rights were violated as a result of the alleged deprivation necessarily fail. Defendants are therefore entitled to summary judgment with respect to plaintiff's

deprivation of property claim.

## CONCLUSION

Based on the foregoing, this Court recommends that plaintiff's motion for summary judgment be denied and that defendants' unopposed cross-motion for summary judgment be granted. This Court further recommends that plaintiff's complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

## OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **April 24, 2020**.

DATED this 1st day of April, 2020.

Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 15